**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Frank Karban, | No. CV-19-04377-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Vivian Baltierra, et al., | |
| Defendants. | |

Plaintiff Stephen Frank Karban ("Plaintiff") has filed a pair of related prisoner civil rights actions involving First Amendment retaliation claims. In the first action, *Karban v. Ostrander*, No. 17-cv-3618-DWL, Plaintiff alleges that Officer Ostrander falsely accused him of making contact with a female visitor in the prison's meeting room, in violation of the prison's no-contact rules, and then filed a false disciplinary report against him in retaliation for his attempt to raise an oral grievance related to the incident. The Court previously denied the parties' cross-motions for summary judgment in the first action, *Karban v. Ostrander*, 2019 WL 2099950 (D. Ariz. 2019), and the trial in that action is scheduled to begin on May 8, 2023.

Meanwhile, in this action (in which Plaintiff is proceeding *pro se*), Plaintiff alleges that after he pursued an administrative grievance against Officer Ostrander related to the matters at issue in the first action, Deputy Warden Baltierra retaliated against him by causing him to be transferred to a new housing unit. (*See generally* Docs. 122, 123.) In February 2021, the Court issued an order granting summary judgment in favor of Baltierra

(as well as in favor of a different prison official whom Plaintiff had sued). (Doc. 161.) However, in a memorandum decision issued in May 2022, the Ninth Circuit reversed in part, holding that "summary judgment was improper on [Plaintiff's] retaliation claim against defendant Baltierra" because "a genuine dispute of material fact exists as to whether Baltierra retaliated against [Plaintiff]." (Doc. 171 at 2-3.) The trial in this action on Plaintiff's remaining claim against Baltierra is scheduled to begin on May 22, 2023.

Now pending before the Court are four motions *in limine* ("MILs") filed by Plaintiff. (Docs. 199, 200, 201, 206.) In an effort to promote clarity and efficiency, the Court will rule on the MILs in advance of the upcoming Final Pretrial Conference. If the parties so desire, they may further address the Court's rulings during that hearing.

I.  Plaintiff's MIL No. 1

Plaintiff asks for permission "to appear unshackled and in civilian clothes before the jury." (Doc. 199 at 1.) In support of this request, Plaintiff cites *Estelle v. Williams*, 425 U.S. 501 (1976), and *Claiborne v. Blauser*, 934 F.3d 885 (9th Cir. 2019). (*Id.*)

Baltierra opposes Plaintiff's motion. (Doc. 203.) Baltierra argues that *Estelle* does not support Plaintiff's position because it "addressed the right to a fair trial for criminal defendants, not civil plaintiffs. Plaintiff in this case has already received a fair criminal trial, been convicted, and sentenced to over a hundred years in prison." (*Id.* at 1.) Baltierra further contends that "there is no risk that Plaintiff's appearance in prison clothes with result in unfair prejudice" because "[t]he allegations giving rise to this case occurred in prison" and that "Plaintiff's restraints are a security matter best left to the discretion of the security officers charged with his custody, and the Court. Based on Plaintiff's lengthy sentence alone, [Baltierra] opines that he is likely a high security risk and should be appropriately restrained for the duration of trial." (*Id.* at 1-2.)

Although the Court disagrees with Baltierra's seeming contention that Plaintiff may be visibly shackled at trial simply because he is a prisoner bringing a civil rights action, Plaintiff's unshackling request fails on the merits. In *Claiborne*, the Ninth Circuit explained that the law has not only "long forbidden the routine use of visible shackling

during a criminal defendant's trial" but that the "unjustified shackling of a convicted state inmate during" a civil trial may "deprive[] [the plaintiff] of a fair trial in violation of the federal constitution." 934 F.3d at 889-90. *See also id.* at 895 ("[T]he prohibition against routine visible shackling applies even when the presumption of innocence does not, including in the civil context."). The court elaborated that "where a plaintiff's dangerousness is a merits issue, visible shackling violates due process unless justified on a case-by-case basis and steps are taken to mitigate prejudice. . . . [P]rejudice may also arise where a core issue in the civil action is credibility." *Id.* at 897. Applying those principles, the court held that the district court committed plain error by allowing the plaintiff in a § 1983 action in which dangerousness was a merits issue "to appear before the jury while shackled throughout his three-day trial without first determining whether the shackles were necessary." *Id.* The court emphasized that the plaintiff's "criminal record consisted of nonviolent property and drug offenses" and that the district court therefore "erred by concluding that it would have kept [the plaintiff] shackled on the basis that he is a convicted felon serving a lengthy prison sentence," as "[s]uch reasoning fails to perform the particularized consideration of necessity" required by Ninth Circuit law. *Id.* at 897-98.

Having performed a particularized consideration of the necessity of shackling, the Court concludes that shackling is indeed necessary here. Unlike the plaintiff in *Claiborne*, who had a nonviolent criminal record and little history of disruptive conduct, Plaintiff is serving a 138.5-year sentence for an array of serious sexual crimes. Additionally, as noted in the summary judgment order in the first action, "the incident on September 2, 2017 was not the first time [Plaintiff] was suspected of engaging in improper conduct in the prison's visitation room. [Plaintiff] is a convicted sex offender with a long history of violating the prison's visitation and contact rules . . . ." *Karban*, 2019 WL 2099950 at *3. Given these considerations, the Court concludes that shackling is necessary here. *Cf. Crago v. Pitz*, 2022 WL 4094150, *2 (D. Ariz. 2022) ("In the present case, Plaintiff was convicted of a violent crime, is serving a lengthy prison sentence, and has an extensive history of violence in prison, including attacks on corrections officers. Based on these individual

characteristics, and the evidence available at this time, leg shackling is appropriate."). Nevertheless, to the extent it is possible to conceal the shackling from the jury even as Plaintiff is acting as his own counsel at trial, the parties will have an opportunity during the Final Pretrial Conference to suggest concealment strategies.

Finally, as for Plaintiff's request to wear civilian clothes, it is denied. *Duckett v. Godinez*, 67 F.3d 734, 747 (9th Cir. 1995) ("Prison clothing cannot be considered inherently prejudicial when the jury already knows, based upon other facts, that the defendant has been deprived of his liberty.").

II.     Plaintiff's MIL No. 2

Plaintiff moves under Rules 401, 403, 404, and 609 to exclude evidence concerning the nature of his underlying conviction (child molestation, sexual abuse, and sexual conduct with a minor), the length of his sentence (138.5 years), and the nature of his incarceration (segregated from the general prisoner population in a designated sex-offender prison unit). (Doc. 200.) Plaintiff argues that "[t]he jury, by the very nature of the case will be aware the plaintiff was/is an incarcerated person"; that his conviction is not admissible for any purpose because it was not a crime of dishonesty; and that curative instructions would be insufficient to protect against the risk of unfair prejudice. (*Id.* at 2-3.)

Baltierra opposes Plaintiff's motion. (Doc. 204.) First, Baltierra argues that the fact of Plaintiff's conviction is admissible under Rule 609 for impeachment purposes, subject only to Rule 403 considerations. (*Id.* at 1.) Second, Baltierra argues that because this case is connected with another civil rights action brought by Plaintiff, and "[o]ne of the main issues in that case is the rules and policies regarding inmate contact with visitors, which are particular to Plaintiff's sex-offender housing status," it follows that "[i]n order to provide context and complete the story for the jury, the underlying facts . . . including Plaintiff's conviction and housing status[] are not only relevant but necessary." (*Id.* at 2.)

Plaintiff's arguments are unavailing. As an initial matter, Plaintiff's underlying conviction is admissible for impeachment purposes under Rule 609(a)(1), which governs

- 4 -

1  "attacking a witness's character for truthfulness by evidence of a criminal conviction" and
2  provides that evidence of a felony conviction "must be admitted, subject to Rule 403, in a
3  civil case." Here, Plaintiff's underlying conviction qualifies as a felony and the time
4  limitations set forth in Rule 609(b) are inapplicable because Plaintiff is still serving the
5  sentence associated with the conviction.

6  Turning to Plaintiff's more specific objections, the analysis is guided by *United
7  States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009), in which the Ninth Circuit addressed
8  "the scope of inquiry into prior convictions" under Rule 609. *Id.* at 1175-77. On the one
9  hand, the court held that "the prior conviction, its general nature, and punishment of felony
10 range [are] fair game for testing the defendant's credibility." *Id.* at 1175 (alteration in
11 original) (internal quotation marks omitted). The court also cited, with approval, a Fifth
12 Circuit decision suggesting that "the nature of the crime[]" is a permissible area of inquiry.
13 *Id.* (citation omitted). On the other hand, the court held that it is impermissible to delve
14 into "collateral details and circumstances attendant upon the conviction" because "unfair
15 prejudice and confusion . . . could result from eliciting details of the prior crime." *Id.*
16 (internal quotation marks omitted). Applying those standards, the court reversed
17 Osazuwa's conviction for assault of a prison guard because the prosecution had gone too
18 far when impeaching Osazuwa with evidence of his prior conviction for bank fraud by
19 asking him questions about the "specific dishonest acts" upon which the earlier conviction
20 was based. *Id.* at 1175-76.

21 Here, Baltierra does not intend to delve into the details underlying Plaintiff's
22 conviction for child molestation, sexual abuse, and sexual conduct with a minor. Instead,
23 Baltierra merely wishes to identify the nature of the conviction. Under *Osazuwa*, this is
24 "fair game" for purposes of Rule 609. *Id.* at 1175.

25 Baltierra also will be allowed to introduce evidence concerning the length of
26 Plaintiff's sentence. *Osazuwa* holds that a defendant's exposure to "punishment of felony
27 range" is another permissible area of inquiry. *Id.* Although this nomenclature is somewhat
28 ambiguous, other courts have construed it as authorizing mention of the length of the

- 5 -

underlying sentence. *See, e.g., United States v. Snow*, 2020 WL 4814348, *1-2 (D. Ariz. 2020) (construing *Osazuwa* as allowing the introduction of evidence concerning "the prior conviction, its nature, and the term of imprisonment" but precluding the introduction of "collateral details of [the] conviction"). Indeed, in *Osazuwa* itself, the government questioned the defendant about the length of his bank fraud sentence and the Ninth Circuit did not suggest that question was improper. 564 F.3d at 1176 ("Defendant was asked how much time he had spent in prison for bank fraud . . . ."). This is also the rule in other circuits. *See, e.g., United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005) ("The overwhelming weight of authority . . . suggests that . . . inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by [Rule 609], subject to balancing under Rule 403."); *United States v. Albers*, 93 F.3d 1469, 1480 (10th Cir. 1996) ("The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment.") (internal quotation marks omitted); *United States v. Barnes*, 622 F.2d 107, 109 (5th Cir. 1980) ("[W]e do not find any error in the prosecutor's eliciting from Barnes the length of his confinement."); *United States v. Miller*, 478 F.2d 768, 770 n.4 (4th Cir. 1973) ("[T]he more reasonable practice . . . is [to permit inquiry into] . . . the name of the crime, the time and place of conviction, and the punishment.") (alterations in original) (internal quotation marks omitted).

The Court also agrees with Baltierra that, given the specific claims and allegations at issue in this case, Plaintiff's "incarceration type" (*i.e.*, he is being segregated from the general prisoner population in a designated sex-offender prison unit) is relevant. As discussed at the outset of this order, Plaintiff's retaliation claim against Baltierra is related to his retaliation claim against Ostrander, which in turn is related to the enforcement of the rules and policies that are particular to Plaintiff's housing status.

Finally, the Court is not persuaded that Rule 403 requires the exclusion of relevant evidence concerning the nature of Plaintiff's conviction, the length of Plaintiff's sentence, and Plaintiff's incarceration type. Credibility will be key in this case and Baltierra should

1  be allowed to introduce relevant evidence bearing on Plaintiff's credibility.  Additionally,
2  because the jury will be aware, due to the very nature of Plaintiff's claims in this action,
3  that Plaintiff is incarcerated, the potential for unfair prejudice flowing from the introduction
4  of information related to Plaintiff's conviction and housing status is more attenuated than
5  it would be in a non-prisoner case.

III. <u>Plaintiff's MIL No. 3</u>

Plaintiff moves under Rules 401, 403, and 404(b) "to exclude evidence regarding Plaintiff's unrelated litigation." (Doc. 201 at 1.)  More specifically, Plaintiff argues that "[w]hile the jury is likely to learn of [Officer] Ostrander, the jury should be barred from learning that she is a defendant in *Karban v. Ostrander*" because "[e]vidence inferring or suggesting that the plaintiff is litigious poses a substantial danger of jury bias, because it would undoubtedly cause the jury to question the validity of plaintiff's current claims." (*Id.* at 2.)

Baltierra opposes Plaintiff's motion.  (Doc. 205.)  Baltierra argues that the allegations and evidence in Plaintiff's two cases are "incurably intertwined," in part because Plaintiff "alleges the motivation for the transfer [by Baltierra] was his grievance against Officer Ostrander," and thus "[i]t will be impossible to educate the jury on the facts of this case, provide context, and complete the story, without reference to *Karban v. Ostrander*." (*Id.* at 1-2, emphasis omitted.)

Plaintiff's motion is denied for several interrelated reasons.  First, the Court tends to agree with Baltierra that it would be impossible, as a practical matter, to disentangle this case from *Karban v. Ostrander* given the closely related nature of the factual allegations in the two cases.  Second, it is unlikely the jury will have an emotional, prejudicial reaction to the mere fact that Plaintiff has brought a separate lawsuit against Ostrander.  At any rate, any risk of such prejudice can be controlled through jury instructions.  Third, to the extent Ostrander may be called as a witness at trial, the fact that she has been sued by Plaintiff would be relevant in assessing her credibility and potential bias.  Under these circumstances, it would be inappropriate to issue a blanket, pre-trial ruling that any mention

- 7 -

of *Karban v. Ostrander* is prohibited. *Cf. Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, *1 (C.D. Cal. 2010) ("[M]otions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial.").

IV.     Plaintiff's MIL No. 4

In his final MIL, Plaintiff seeks "an order designating [Baltierra] as an adverse witness and [permitting] Plaintiff to ask leading questions of her upon direct examination at trial." (Doc. 206.) In support of this request, Plaintiff cites Federal Rule of Evidence 611(c). (*Id.* at 1.)

Baltierra opposes Plaintiff's motion. (Doc. 210.) Baltierra acknowledges that, because she "is an adverse party in this case," "it is firmly within the Court's discretion to allow or limit leading questions as necessary to develop [her] testimony" but argues that because "Plaintiff has not provided any specific examples demonstrating that [her] testimony at trial will be hostile or necessitate leading questions . . . it would be inappropriate to permit Plaintiff to ask leading questions, carte blanche, on direct examination." (*Id.* at 1.)

Plaintiff's request is granted. Rule 611(c)(2) provides that although "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony," "[o]rdinarily, the court should allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Here, Baltierra is adverse to Plaintiff by virtue of her status as his party-opponent. *Rodriguez v. Bano Cent. Corp.*, 990 F.2d 7, 13 (1st Cir. 1993) ("[T]he rules generally permit leading questions to be used against an opposing party.").

…

…

…

…

…

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's MIL No. 1 (Doc. 199) is **denied**.

(2) Plaintiff's MIL No. 2 (Doc. 200) is **denied**.

(3) Plaintiff's MIL No. 3 (Doc. 201) is **denied**.

(4) Plaintiff's MIL No. 4 (Doc. 206) is **granted**.

Dated this 28th day of December, 2022.

Dominic W. Lanza
United States District Judge